## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK M. ST. FLEUR,<br><br>      Plaintiff,<br> v.<br><br>CITY OF LINDEN, NEW JERSEY, et al.,<br><br>      Defendants. | Action No. 15-cv-01464 (SRC)(CLW)<br><br>**OPINION & ORDER** |

   This matter comes before the Court on Defendant Nicholas Scutari's (Defendant) motion for a protective order and motion to compel, in which he respectively requests that the Court not permit his deposition and permit an additional day of Plaintiff's deposition. The Court heard informally from the parties but otherwise declined to hear oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies both motions.

  **I.**  **Background**

   As alleged by Plaintiff, this case arises out of an incident that began in the early morning of March 18, 2012, when Plaintiff was approached by police officers in the parking lot of a night club in Linden, New Jersey, and was told by the officers to "get the f___ out of there." (Compl., ECF No. 1, ¶ 44.[1]) When Plaintiff tried to unlock his car to oblige them, he "was grabbed from behind by an unknown assailant[. . .] and pushed into the crowd of other officers" and subsequently "received several kicks and punches from the officers." (Id., ¶¶ 48-49.) He was then sprayed with an irritating liquid and pulled by his hair into a police car. (Id., ¶¶ 50-51.) Upon arrival at the

---

[1] This pleading remains operative in the instant matter, as Plaintiff's amended complaint (ECF No. 49) was improperly filed and has not been answered.

Linden Police Department, an officer discovered that Plaintiff lived in Newark and remarked "that they would show him what they do to people who come to Linden from Newark." (Id., ¶ 53.) Plaintiff thereafter was charged with failure to disperse, harassment, resisting arrest, and aggravated assault, but on April 17 the resisting arrest charge was downgraded to failure to disperse and the aggravated assault charge was downgraded to a disorderly conduct charge to be adjudicated in the Linden Municipal Court. (Id., ¶¶ 68, 74.)

Shortly after Plaintiff's arrest, some individuals acting on his behalf went to the restaurant where the club is located and obtained raw files of the surveillance tapes from March 18, 2012. (Compl., ECF No. 1, ¶ 70.) On April 2, Plaintiff's counsel sent a notice to the Linden Police Department asking them to retain all evidence relating to the case, including video recordings from the station the day Plaintiff was booked. (Id., ¶ 71.) However, the police department failed to preserve the evidence. (Id., ¶ 73.) On May 21, Plaintiff requested discovery from Linden, and notice was sent to Defendant, Chief Municipal Prosecutor Nicholas Scutari. (Id., ¶ 77.) On November 28, Defendant and some of the officers present at the scene of the incident viewed the surveillance footage. (Id., ¶¶ 78, 80.)

Plaintiff filed motions with the Municipal Court to compel discovery, including witness information, internal records concerning the arresting officers, and video recordings from police cars and the police station, which were consistently denied. (Compl., ECF No. 1, ¶¶ 82-85.) On April 24, 2013, Plaintiff found out that the City of Linden had a policy of retaining evidence for sixty days, which is in violation of New Jersey Department of Archives and Record Management guidelines. (Id., ¶¶ 88-89.) However, Plaintiff also secured an expert who decoded the files from the night club surveillance cameras and he was able to view the video and it "completely

contradicted the entire allegations in the police report[]" such that the video shows the officers approaching and then assaulting Plaintiff. (Id., ¶¶ 93-94.)

Plaintiff was tried in the summer of 2013, was found guilty of three charges, and was sentenced to the maximum sentence. (Compl., ECF No. 1, ¶ 114.) He appealed the verdict to the Superior Court, Union County, Law Division and was acquitted on December 1, 2014. (Id., ¶ 119.) Plaintiff now claims that, as a result of his arrest and jail time, he lost his job and had to receive unemployment benefits, and that he "developed fears and stresses" forcing him to seek treatment. (Id., ¶¶ 123-24.) Plaintiff further alleges violations of his constitutional rights, conspiracy to violate his constitutional rights, wrongful arrest, intentional infliction of emotional distress, and malicious prosecution. (Id., ¶¶ 127-79.) He also seeks punitive damages, injunctive relief, and a declaration that a statute he was charged under is unconstitutionally vague. (Id., ¶¶ 159-69, 180-88.)

## II.     Motion for Protective Order

On June 1, 2017, Defendant Scutari filed a motion for a protective order so that he would not have to undergo a deposition. (ECF No. 64.) He argues that he is a high-ranking government official and, by reference to the applicable case law, further contends that Plaintiff fails to demonstrate the requisite "exceptional circumstances" in order to depose him. (Motion Br., ECF No. 64-1 at 18-23; Reply, ECF No. 76, at 8-11.[2]) He similarly claims that he does not have important information that cannot be found elsewhere. (Id., at 14.) Plaintiff disputes that Defendant is a high-ranking government official and, in any event, maintains that Defendant has failed to demonstrate that he should be shielded from deposition. (Opp., ECF No. 75-1, at 15-24.)

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

---

[2] References use page numbers assigned by CM/ECF.

However, "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1). When the person to be deposed is a high-ranking government official, "there must be, at the very least, a showing of the need for and relevance of the predicted testimony." (Motion Br., ECF No. 64-1 at 13) citing Hyland v. Smollock, 137 N.J. Super. 456, 460 (App. Div. 1975)). Defendant directs the Court to Buono v. City of Newark for the following factors to be applied in determining when a high-ranking government official can be deposed:

> 1) that the official's testimony is necessary to obtain relevant information that is not available from another source; 2) the official has first-hand information that cannot reasonably be obtained from other sources; 3) the testimony is essential to the case at hand; 4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and 5) the evidence sought is not available through any alternative source or less burdensome means.

249 F.R.D. 469, 471, n. 2 (D.N.J. 2008).

As is evident from the cases set forth by the parties, although courts have not delineated precise definitions or guiding factors for what constitutes "high-ranking," such officials who are shielded from depositions absent exceptional circumstances tend to be mayors of large cities or other people in full-time government positions with large responsibilities. As Plaintiff points out, in Buono, the official in question was the mayor of Newark and he was not required to submit to a deposition. (Opp. Br., ECF No. 74 at 12.) And, for example, in Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007), the court found that the mayor of Boston did not have to be deposed. Plaintiff also cites Robinson v. City of Philadelphia, where the court found that the mayor of Philadelphia did not have to be deposed. No. 04-3948, 2006 WL 1147250 (E.D. Pa. Apr. 26, 2006). Another case Plaintiff points to is In re United States (Holder), where the court ruled that the Attorney General and Deputy Attorney General did not have to be deposed. 197 F.3d 310 (8th Cir. 1999). Finally, Defendant cites Marisol A. by Forbes v. Giuliani to show that "reasonable limits

4

must be placed on the depositions of government officials," although there the court found that the mayor of New York City did not have to be deposed. (Motion Br., ECF No. 64-1 at 19 (citing 1998 WL 132810, at *1 (S.D.N.Y. Mar. 23, 1998)).

The applicable case law thus suggests, as Plaintiff argues, that Defendant is unlikely to be considered a high-ranking government official by any court and, moreover, Defendant offers little to persuade this Court to adopt a broad construction. Indeed, Defendant is a part-time state senator, a part-time prosecutor, and also runs his own private law practice. (Opp. Br., ECF No. 75 at 2-3; Scutari Cert., ECF No. 64-7 ¶¶ 1-3.). As Plaintiff points out, every case that Defendant cites applies "only to full-time executive or administrative officials who are responsible for managing large departments." (Opp. Br., ECF No. 75 at 11.) Defendant has acknowledged that he does not oversee the Linden Law Department, Scutari Cert., ECF No. 64-7 ¶ 19, and otherwise does not articulate his prosecutorial and senatorial duties and the purported concomitant interference a deposition would impose. Rather, the record makes clear that his position as a state senator is not so time-consuming as to prevent him from carrying on a law practice while working as Linden's Chief Municipal Prosecutor. The Court declines, therefore, to characterize Defendant's position as one that shields him from deposition.

Plaintiff further argues that the Buono factors would weigh in favor of deposition even if Defendant were a high-ranking official. Plaintiff wants to question him about "his personal involvement in the prosecution" including "the initial discovery and reviewing the video tape." (Opp. Br., ECF No. 75 at 17.) As Defendant has been a prosecutor for the city of Linden since 2003, it is reasonable to conclude that he would know about the city's discovery retention policies and can provide relevant, and possibly essential, information that he obtained first-hand. Similarly, as Plaintiff asserts, Defendant also can offer insight into his "decisions on discovery, his

5

discussions with the police officers, his decisions on whether to prosecute[,] his role in assuring that discovery is available" and more. (Id., at 17.) This information more amenable to exploration through deposition than through a brief certification or declaration. And, although Defendant contends that he should not be deposed based on his failure to recall working on the underlying case, this is a bare unchallenged assertion that ignores the possibility of partial recollection or a refreshed recollection. See Scutari Cert., ECF No. 64-7, ¶ 6; Opp. Br., ECF No. 75 at 10. In addition, a deposition would not be as burdensome as Defendant suggests, because Plaintiff's attorneys are willing to depose him on a weekend or at night to accommodate his schedule. (Opp. Br., ECF No. 75 at 19.) Although Defendant argues that a deposition would be a "disruption of the primary functions of the state government that he serves," Motion Br., ECF No. 64-1 at 19, the Court is not convinced that there will be a disruption or that a primary function is at issue here. Finally, although Defendant contends that several other people are positioned to provide the information sought by Plaintiff, it is plainly more efficient to depose a single principal actor in the form of Defendant.

### III. Motion to Compel

Plaintiff was deposed for a total of six hours and 59 minutes over consecutive days earlier this year; Defendant now seeks leave from to depose Plaintiff for an "additional day" because new information has come to light since his deposition. (Motion Brief, ECF No. 74 at 1-3.) Pursuant to Rule 30(a)(2)(A)(ii), Defendant seeks to question Plaintiff on: his history of drug and alcohol abuse, his incarceration history, his disability history, his work history, and his psychiatric history. (Motion Br., ECF No. 74 at 12.) Defendant also requests production of Plaintiff's financial records, including 1099 forms, W-2 statements, and tax returns, to verify the claim that he lost his job due to his arrest, trial, and time spent in jail. (Id., at 14.)

Whether to grant leave for a further deposition is within the trial court's discretion. Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 239 (S.D.N.Y. 2002); Fed. R. Civ. P. 30(a)(2)(B). "Absent some showing of need or a good reason for doing so, a deponent should not be required to appear for a second deposition." Melhorn v. New Jersey Transit Rail Operation, Inc., 203 F.R.D. 176, 180 (E.D. Pa. 2001).

Defendant principally contends that further deposition is warranted because the defendants had not received certain records before the deposition, i.e., they subpoenaed some information, such as reports from psychologists who have met with Plaintiff, and not all subpoenas were complied with "in a timely fashion." (Motion Br., ECF No. 74 at 12.) However, Plaintiff insists that "had the opportunity to utilize all the tools available to any litigant to obtain documents[. . .] that they only employed after his deposition." (Opp. Br., ECF No. 80 at 5 (emphasis in original).) Such circumstances may warrant the imposition of a second deposition. See United States v. Prevezon Holdings, Ltd., No. 13-6326, 2017 WL 1116106, at *2 (S.D.N.Y. February 27, 2017) (defendant's deposition of a witness was "premature" when it had not finished document discovery, and courts may deny a second deposition for this reason). However, Plaintiff persuasively points out that Defendants in this case "never provide a justification for failing to serve the subpoena well before the depositions" or "why they waited 20 months to press for tax information." (Opp. Br., ECF No. 80 at 5-6.) Indeed, when "the party seeking discovery has had ample opportunity to obtain the information," discovery must be limited. Fed. R. Civ. P. 26(b)(2)(B)(ii). On balance, therefore, the Court concludes that Plaintiff need not submit to further deposition based on the full prior deposition, the opportunity to explore Defendant's proffered avenues of inquiry at trial, and Defendant's inadequate explanations as to how both of those are

insufficient. See Melhorn, 203 F.R.D. at 180 (A court can require a party to forego a further deposition when they are "free to explore those issues at trial.").

Defendant also requests Plaintiff's tax records for proof that Plaintiff lost his job and has been unable to work since. However, "'public policy favors the nondisclosure of income tax returns.'" Jackson v. Unisys, Inc., No 08-3298, 2010 WL 10018, at *2 (E.D. Pa. Jan. 4, 2010) (quoting DeMasi v. Weiss, 669 F.2d 114, 119 (3d Cir. 1982)). "An individual's privacy interest in his tax returns must be weighed against factors including the opposing party's need for the information, its materiality, and its relevance." Id. Courts can use a two-part balancing test: "first, the court determines the relevance of the tax returns to the litigation; if the returns are found to be relevant, the court then determines whether there is a compelling need for the tax returns due to the sought after information being otherwise unavailable." Robinson v. Horizon Blue Cross-Blue Shield of New Jersey, No. 12-02981, 2013 WL 6858956, at *3 (D.N.J. 2013).

Plaintiff's argument is that his tax returns are "not relevant to this matter since he has not asserted a claim for lost wages." (Opp. Br., ECF No. 80 at 6.) In Jackson, by contrast, the court found the tax returns in question relevant because the plaintiff had asserted a claim for lost wages and so had "placed his income in dispute." 2010 WL 10018, at *2. Plaintiff also claims that it is not necessary to produce the requested forms to show that he lost his job because Defendant could have asked his former employers. (Opp. Br., ECF No. 80 at 6.) In light of the aforementioned public policy and the nature of the claims at issue, the Court denies Defendant's request for want of relevance and a compelling need for the information.

**ACCORDINGLY** it is, on this 10th day of August 2017,

**ORDERED** that the motion for a protective order (ECF No. 64) is denied; and

**ORDERED** that the motion to compel (ECF No. 73) is denied; and

**ORDERED** that the Clerk shall terminate ECF Nos. 64 and 73.


*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**