**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| | : | |
| PATRICK M. ST. FLEUR, | : | |
| Plaintiff, | : | |
| | : | **Civil Action No. 15-1464 (SRC)** |
| v. | : | |
| | : | **OPINION** |
| CITY OF LINDEN, NEW JERSEY (a New Jersey | : | |
| Municipal Corporation); POLICE DEPARTMENT | : | |
| OF THE CITY OF LINDEN; LAW | : | |
| DEPARTMENT OF THE CITY OF LINDEN; | : | |
| NICHOLAS P. SCUTARI (in his official capacity | : | |
| as Chief Municipal Prosecutor); JAMES M. | : | |
| SCHULHAFER (in his official capacity as Chief | : | |
| of the City of Linden Police Department); | : | |
| OFFICER MARTIN JEDRZEJEWSKI; | : | |
| OFFICER GAVIN SHEEHAN; OFFICER | : | |
| JASON MOHR; LIEUTENANT ANDREW | : | |
| BARA; SERGEANT NANCY PETRUSKI; | : | |
| CHARLES CRANE and JOHN DOES 1-100 | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**CHESLER,** District Judge

This matter comes before the Court upon Defendants' motion for summary judgment. Plaintiff, Patrick St. Fleur ("Plaintiff" or "St. Fleur") opposes the motion. The Court has reviewed the papers filed by the parties. It proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion for summary judgment will be granted in part and denied in part.

## I.     Background

Plaintiff initiated this civil rights action on February 26, 2015. Plaintiff thereafter filed an Amended Complaint on October 20, 2017. ECF No. 94. The Defendants named in the Amended

Complaint are as follows: Linden Police Department, City of Linden, Law Department of the City of Linden ("Linden Law Department"), Municipal Prosecutor Nicholas P. Scutari ("Scutari"), Chief of Police James M. Schulhafer ("Chief Schulhafer"),[1] Officer Martin Jedrzejewski ("Officer Jedrzejewski"), Officer Gavin Sheehan ("Officer Sheehan"), Officer Jason Mohr ("Officer Mohr"), Lieutenant Andrew Bara ("Lt. Bara"), Sergeant Nancy Petruski ("Sgt. Petruski"), and Charles Crane ("Mr. Crane"), who is a civilian employee of the City of Linden and Linden Police Department (collectively, "Defendants").

Defendants have moved for summary judgment on all claims, which are the following: a federal civil rights claim pursuant to 42 U.S.C. § 1983 for excessive force (Count One); a Section 1983 claim for false arrest (Count One); a Section 1983 claim for malicious prosecution (Count One); a Section 1983 claim for violation of due process (Count One); an unspecified wrongful arrest claim (Count Three); a common law claim for malicious prosecution (Count Seven); a Monell municipal liability claim against Linden (Count Two); a claim for injunctive relief seeking to stop the Monell violations as alleged in Count Two (Count Five); a claim for punitive damages against Linden (Count Eight); a claim challenging N.J.S.A. 2C:33-1(b) as unconstitutionally vague (Count Four); and a claim for intentional infliction of emotional distress (Count Six).

The relevant facts are as follows.

## A. Plaintiff's Arrest

In the early morning hours of March 18, 2012, Plaintiff was a patron at a nightclub called Nuno's Club ("Nuno's") in the City of Linden. At approximately 2:30 a.m., Nuno's closed for the night. Plaintiff exited the club and walked towards his car, which he had parked two spaces

---

[1] It is undisputed that at the time the relevant events occurred, Defendant James M. Schulhafer held the position of Captain in the Linden Police Department, and was not involved in the events surrounding Plaintiff's arrest.

away from the club's entrance in the Nuno's parking lot. At this time, officers were present

outside the club due to fights amongst various patrons outside the building. The officers were

called to the scene by Lt. Bara, who was working security at the club that evening.

After exiting the club, Plaintiff remained standing next to his vehicle for approximately

fifteen minutes while speaking to a friend, Yusef Jackson, and an unidentified woman he had just

met. While standing next to his vehicle with these two individuals, Plaintiff was approached by

City of Linden police officers, including Officers Jedrzejewski, Mohr, and Sheehan, and Lt.

Bara. The officers yelled that Plaintiff "had to 'get the F out of there.'" Defs.' Statement of

Undisputed Material Facts, ECF No. 109-3 ("Defs. SOMF"), ¶ 14. After the officers yelled at

Plaintiff to leave, Plaintiff's friend, Yusef Jackson, immediately walked away from where he had

been standing next to Plaintiff's vehicle. Plaintiff, meanwhile, took out his car keys from his

pocket in response to the officers' command.

The next few actions that occurred, including the amount of time it allegedly took

Plaintiff to actually remove his keys from his pocket, are disputed. However, it is undisputed that

Plaintiff began to speak to the officers, and that after Plaintiff began to speak with them, his

friend Yusef Jackson turned around and returned to Plaintiff's vehicle.

The reason for Plaintiff's arrest differs in a few key regards, as the parties dispute what

happened next. Plaintiff contends he was attempting to heed the officers' commands to leave,

while Defendants assert that Lt. Bara ordered Plaintiff be arrested for failing to heed their

commands to leave the premises. Defendants further contend that Plaintiff did not unlock his

vehicle until after the officers physically attempted to arrest him, which Plaintiff disputes.

Nevertheless, Plaintiff was thereafter arrested, and alleges that during this arrest he was

assaulted. Specifically, Plaintiff alleges he was punched and kicked by the arresting officers, and

that after being handcuffed, he was pulled into a police car by his hair, causing him to lose multiple dreads. Plaintiff also asserts that he was pepper sprayed while handcuffed, although he is unable to identify which of the arresting officers sprayed him.

It is undisputed that Plaintiff was then brought to Linden Police Headquarters in a vehicle operated by another officer, Officer Palma, who is not named as a defendant in this case. Defs. SOMF ¶ 68. Upon arrival in the parking garage, Plaintiff alleges he was once again assaulted by various officers. Plaintiff was thereafter escorted to the headquarters booking room, where he contends a third assault occurred. Defendants dispute both of these assertions.

Officers then removed Plaintiff from the booking room; the parties again dispute what happened next. According to Defendants, Plaintiff and an officer fell to the ground in the hallway after leaving the booking room on the way to a holding cell. Defendants further assert that Plaintiff was argumentative and allegedly spit on Officer Jedrzejewski during this incident. Plaintiff, meanwhile, contends that he did not fall in the hallway when being brought to a holding cell, but was instead slammed into a wall, thrown to the ground, kicked, and finally dragged into the holding cell. Plaintiff also disputes that he was argumentative or that he spit on Officer Jedrzejewski. Plaintiff contends that he suffered bruising as a result of these four separate alleged assaults.

### B. Criminal Charges

As a result of the incidents in parking lot of Nuno's and the alleged spitting incident at Linden Police Headquarters, Plaintiff was charged with the following four crimes:

- Failure to Disperse, contrary to N.J.S.A. 2C:33-1B;

- Harassment, contrary to N.J.S.A. 2C:33-4B;

- Aggravated Assault, contrary to N.J.S.A. 2C:12-13; and

- Hindering Apprehension, contrary to N.J.S.A. 2C:29-3B.

The Complaint Warrant was filed by Officer Jedrzejewski, who also filed the police report regarding Plaintiff's arrest. ECF No. 109-6, Ex. F (Compl. Warrant); Ex. G. (Police Report).

The charges were then submitted to the Union County Prosecutor's office to determine whether the charges should stand or be downgraded. By letter dated April 17, 2012, the Union County Prosecutor's office downgraded two of the four charges. The charge of Hindering Apprehension was downgraded to one for Failure to Disperse, in violation of N.J.S.A. 2C:33-1B, while the charge of Aggravated Assault was downgraded to one for Disorderly Conduct, in violation of N.J.S.A. 2C:33-2A. The two remaining charges (Harassment and Failure to Disperse) remained unchanged. The matter was then remanded to the Linden Municipal Court for further proceedings and disposition.

### C. Municipal Court Proceedings and Alleged Destruction of Evidence

In 2012, all video that was captured by Linden police vehicles was downloaded to a server in Linden police headquarters. Linden's policy at the time instructed that any video from a police vehicle would thereafter be preserved "via a burn request" by an officer assigned to that vehicle. Defs. SOMF ¶ 70. In 2012, these burn requests were submitted by officers to Mr. Crane, a Linden civilian employee and Computer Systems Technician. Id. ¶ 71. The system was otherwise purged every thirty days by Mr. Crane "as a matter of routine policy due to space and cost constraints." Defs. SOMF ¶ 73.[2] Thus, if no burn request was submitted, video would not be preserved and would be purged from the server after a thirty-day retention period. Id. ¶ 74. While burn requests were mandatory in DWI and pursuit cases, burn requests in other matters were left

---

[2] It is undisputed that at the time of Plaintiff's arrest on March 18, 2012, Mr. Crane's supervisor was Sergeant Marianne Astalos, who is non-party to this suit. Defs. SOMF ¶ 72. Sgt. Petruski, who is a named Defendant, took over as Mr. Crane's supervisor at some unspecified time thereafter. Id.

up to the judgment of the officer assigned to the vehicle that the camera had recorded relevant evidence. Id. ¶ 76. No burn requests for any vehicle video at the scene of Plaintiff's arrest were received by Mr. Crane from any of the officers involved, and thus no video from any vehicle that may have been on the scene was burned or preserved. Id. ¶¶ 77-78.[3]

The parties dispute whether Plaintiff's counsel served a preservation notice on the proper parties, or whether the discovery demands made were sufficiently specific with regard to requests for police vehicle footage. However, it is undisputed that no video footage from any police vehicles that may have been on the scene that night was preserved or provided to Plaintiff. The only surveillance video provided to Plaintiff by the Linden Police Department is a video from Linden Police Headquarters showing officers removing Plaintiff from the booking room. Nevertheless, it appears that independent surveillance video from Nuno's (the "Nuno's Surveillance Video") was made available to Plaintiff and the Municipal Prosecutor from an independent source, presumably the proprietor of the establishment.[4]

On December 24, 2012, Plaintiff's counsel submitted a letter to Municipal Prosecutor Scutari outlining perceived discovery violations under Brady v. Maryland, 373 U.S. 83 (1963), and Plaintiff's belief that the State had failed to retain exculpatory or potentially exculpatory evidence, including but not limited to the police vehicle videos, and asserting Plaintiff's due process rights had been violated as a result. ECF No. 109-6, Ex. N (Plaintiff's Dec. 24, 2012 Letter).

---

[3] The parties do not dispute that the thirty-day retention policy was later elongated to a ninety-day retention policy. However, this change is not relevant to the facts of this case.

[4] The Court notes that neither of the parties' Statements of Undisputed Material Facts provides how the surveillance video from the nightclub parking lot they both refer to was obtained, when, or from whom. Instead, Defendants' counsel's certification in support of Defendants' motion for summary judgment and Plaintiff's counsel's declaration in opposition to Defendants' motion both simply list "Surveillance Video From Nuno's Club" as an exhibit. See ECF No. 109-5 at 2; ECF No. 115-3 at 2. Although it is listed as an exhibit by Defendants and Plaintiff, the Court did not review such video.

On February 13, 2013, the Municipal Court held a probable cause hearing at the request of Plaintiff's counsel. The prosecutor assigned to all motions and Plaintiff's trial was Daniel Antonelli, Esq., Assistant Municipal Prosecutor. Officer Jedrzejewski testified at this hearing. After hearing testimony and viewing the Nuno's Surveillance Video,[5] the Municipal Court denied Plaintiff's motion and found probable cause for the charges against Plaintiff. The Municipal Court thereafter proceeded to hold a trial on the following dates: May 8, 2013; September 11, 2013; and October 9, 2013.

The destruction of the potentially exculpatory evidence outlined in Plaintiff's counsel's December 24, 2012 Letter was litigated before the Municipal Court during this trial.[6] On May 8, 2013, the Municipal Court denied Plaintiff's motion to compel and/or dismiss, and held that "any discovery that may have been destroyed was (a) neither favorable or material to the charges in issue, or (b) not destroyed or otherwise not provided because of any bad faith on the part of the prosecution." ECF No. 109-06, Ex. O (June 20, 2013 Municipal Court Decision and May 22, 2013 Superior Court Order).

The Municipal Court further stated:

> [Plaintiff] has made absolutely no showing, either factually or legally, that any of the items sought, including but not limited to, video, audio, paper, internal affairs files or witness information, are either relevant or being withheld or were destroyed because of any ill intent.

---

[5] Plaintiff disputes that the Municipal Court actually viewed the Nuno's Surveillance Video. Plaintiff further alleges that Officer Jedrzejewski provided fraudulent and perjurious testimony at the probable cause hearing.

[6] Although the record is unclear as to the exact sequence of events, it is clear that the Municipal Court's ruling on Plaintiff's Brady application was appealed to the Superior Court. On May 22, 2013, the Superior Court remanded the interlocutory appeal to the Municipal Court for "a thorough analysis of its findings as to Brady v. Maryland, 373 U.S. 83 (1983) and its legal basis for same by May 31, 2013." ECF No. 109-06, Ex. O (June 20, 2013 Municipal Court Decision and May 22, 2013 Superior Court Order). It appears that the June 20, 2013 Decision by the Municipal Court was provided in response to the Superior Court's May 22, 2013 Order.

Id. Plaintiff subsequently renewed his motion to dismiss, again based upon the failure to retain and/or destruction of the potentially exculpatory evidence.[7] ECF No. 109-06, Ex. S (Oct. 9, 2013 Municipal Court Tr.) at 66:17-21. The Municipal Court denied this motion. At the conclusion of trial, the Municipal Court dismissed the Harassment charge, N.J.S.A. 2C:33-4, but convicted Plaintiff of one count of Disorderly Conduct and two counts of Failure to Disperse. ECF No. 109-06, Ex. S (Oct. 9, 2013 Municipal Court Tr.); Defs. SOMF ¶ 83.

### D. Plaintiff's Appeal

The sentence of the Municipal Court was stayed pending appeal. On December 1, 2014, the Superior Court reversed all three of Plaintiff's convictions on appeal. The instant lawsuit followed.

## II. Legal Standards

### A. Summary Judgment

Defendants bring this motion pursuant to Federal Rule of Civil Procedure 56 seeking summary judgment on all claims asserted against them in the Amended Complaint. In evaluating the motion, the Court applies the well-established legal standard for summary judgment.

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would

---

[7] Plaintiff additionally requested the Court draw an adverse inference against the State for failure to retain and produce the potentially exculpatory material, should the Municipal Court decline to grant Plaintiff's motion to dismiss. ECF No. 109-06, Ex. S (Oct. 9, 2013 Municipal Court Tr.) at 78:02-08.

affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. <u>Anderson</u>, 477 U.S. at 255; <u>see also</u> <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

The showing required to satisfy Rule 56(a)'s standard depends on whether the moving party or the non-moving party bears the burden of proof at trial as to the claim or issue in question. When the party moving for summary judgment has the burden of proof at trial, "that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003) (quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. <u>Jersey Cent. Power & Light Co. v. Lacey Twp.</u>, 772 F.2d 1103, 1109 (3d Cir. 1985). To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. <u>Gleason v. Norwest Mortg., Inc.</u>, 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by <u>Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l</u>

Union of Operating Eng'rs and Participating Emp'rs, 134 S.Ct. 773 (2014). The party opposing a motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

### B. 42 U.S.C. § 1983

"A plaintiff seeking relief under 42 U.S.C. § 1983 must demonstrate 'that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'" Black v. Montgomery Cty., 835 F.3d 358, 364 (3d Cir. 2016) (quoting Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005)). "Accordingly, section 1983 is not a source of substantive rights but rather a mechanism to vindicate rights afforded by the Constitution or a federal statute." Id. (citation omitted).

Third Circuit caselaw explicitly provides that Section 1983 "has no statute of limitations of its own." Randall v. City of Phila. Law Dep't, 919 F.3d 196, 198 (3d Cir. 2019) (citing 42 U.S.C. § 1983). Instead, "it borrows the underlying state's statute of limitations for personal-injury torts." Id. (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). Accordingly, a cause of action under this section accrues when the plaintiff knew, or should have known, of the injury forming the basis of his or her action. See Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1988). New Jersey places a two-year statute of limitations on personal injury torts, N.J.S.A. § 2A:14-2, and thus a two-year statute of limitations on Section 1983 actions. Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010).

### III.    Discussion

The instant motion for summary judgment was filed on behalf of all Defendants to dismiss all counts of Plaintiff's Amended Complaint. However, Defendants fail to present any argument in their moving or reply papers as to Count Four (seeking to declare N.J.S.A. 2C:33-1(b) unconstitutional). Thus, the Court denies Defendants' motion for summary judgment as to Count Four of the Amended Complaint. The Court will analyze each of the remaining counts of Plaintiff's Amended Complaint in turn.

### A.    Claims Against the Linden Police Department and Linden Law Department of the City of Linden

Defendants argue that summary judgment should be granted as to the Linden Police Department and Linden Law Department because a subdivision of a state entity, such as a municipal police department, is not an entity subject to suit. The Court agrees with Defendants.

For purposes of Section 1983 actions, Third Circuit caselaw provides that "police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Township of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (internal quotation omitted). "Where both a municipality and its police department are defendants in an action, the police department should be dismissed." Homsi v. Borough of Seaside Park, No. 16-2937, 2018 U.S. Dist. LEXIS 211002, at *23 (D.N.J. Dec. 14, 2018) (citing Woodyard v. Cty. of Essex, 514 F. App'x 177, 181 (3d Cir. 2013)). The Linden Police Department and Linden Law Department are merely administrative arms of the municipality. Accordingly, the Linden Law Department and Linden Police Department are not proper parties in this action amenable to suit. Defendants' motion for summary judgment is granted as to the Linden Law Department and the Linden Police Department, and they are dismissed as Defendants in this matter.

**B. Plaintiff's Claims for Intentional Infliction of Emotional Distress (Count Six) and False Arrest (Count Three) are Time-Barred.**

Defendants argue that Plaintiff's claims for IIED (Count Six),[8] and false arrest/wrongful arrest (Count Three) [9] are time-barred. They are correct.

New Jersey places a two-year statute of limitations on common law personal injury torts. See N.J.S.A. § 2A:14-2. In this case, Plaintiff was arrested on March 18, 2012, and arraigned on March 23, 2012. However, Plaintiff failed to file his initial Complaint until February 26, 2015, nearly three years after the date of his arrest and arraignment. Thus, the two-year statute of limitations on personal injury actions in New Jersey bars any claims against Defendants for intentional infliction of emotional distress or false arrest.

Plaintiff unpersuasively argues that his IIED claim is timely and does not run afoul of the two-year statute of limitations as a result the continuing violation doctrine. Specifically, Plaintiff contends that the IIED is a result of the officers' conduct in "falsely arresting and maliciously prosecuting [Plaintiff]," and that "[t]his malicious prosecution extended until December 2014, when Mr. St. Fleur was forced to appeal his municipal conviction to the Superior Court Law

---

[8] Plaintiff concedes that N.J.S.A. 59:2-10 prohibits a cause of action for IIED from being brought against public entities such as the City of Linden, the Linden Police Department, or the Linden Law Department. ECF No. 115-1 at 58. Plaintiff specifies that his IIED claim is alleged only against the following individual defendants: Officer Jedrzejewski, Officer Mohr, Officer Sheehan, and Lt. Bara. Id. at 59.

[9] The Court notes that Plaintiff's opposition papers fail to present any argument regarding his wrongful/false arrest claim (Count Three) of the Amended Complaint. Moreover, on page 25 of his opposition papers, Plaintiff explicitly provides that:

> Mr. St. Fleur **does not assert independent claims under § 1983 for his wrongful arrest and the assaults**, although they most certainly were violations of his constitutional rights. Instead, Mr. St. Fleur contends that the wrongful arrest and the assaults he suffered were the first steps in a continuing violation of his State and Federal constitutional rights.

ECF No. 115-1 at 25 (emphasis added). Accordingly, this Court finds that Plaintiff has abandoned any claim for wrongful/false arrest and excessive force under § 1983 as alleged in Count One. Thus, the Court grants summary judgment on the portions of Count One alleging wrongful arrest and excessive force under § 1983. Moreover, because Plaintiff explicitly states he is not alleging a separate count for false arrest under § 1983, the Court will proceed to analyze his false arrest (Count Three) claim as one solely under New Jersey common law.

Division." ECF No. 115-1 at 59. Plaintiff further provides that from the time of his "wrongful arrest through the overturning of his conviction (a period of almost two years), he was forced to live with the severe emotional distress associated with believing he was going to be sent back to federal prison for a crime he did not commit. . . . Therefore, [Plaintiff] . . . continued to suffer severe emotional distress as a result of Defendants' actions through December 2014, which would mean that the filing of his Complaint was well within the statute of limitations." Id. at 60. In support of his claims, Plaintiff points to an expert report and supplemental report submitted by Madelyn Simring Milchman, Ph.D. ("Dr. Milchman"). ECF No. 115, Ex. M (Psychological Injury Evaluation, dated July 6, 2018); Ex. N (Supplemental Report, dated Nov. 8, 2018).

In sum, Plaintiff claims that his IIED claim is timely as he suffered ongoing severe emotional distress not only as a result of the false arrest, but also from the ensuing malicious prosecution he was allegedly forced to endure. Plaintiff's argument suffers from several defects. First, as Defendants point out, Plaintiff fails to provide any citation to caselaw, statute, or other legal authority to support the proposition that the two-year statute of limitations for IIED claims can be tolled in such a manner as to delay accrual, or that such claims can be brought as a continuing and ongoing violation rather than discrete incidents. Because Plaintiff fails to point to any specific doctrine or authority, the Court must surmise that Plaintiff is arguing that the continuing-violation doctrine delayed the start of the limitations period until the Superior Court overturned his convictions, and that the individual officers' conduct constituted a continuing violation. However, other than recitation of the elements required for an IIED claim, Plaintiff wholly fails to provide any legal support for this contention.

The problem for Plaintiff is that "the continuing-violation doctrine focuses on continuing *acts*, not *effects*." Randall v. City of Phila. Law Dep't, 919 F.3d 196, 199 (3d Cir. 2019) (citation

omitted) (discussing the continuing violation doctrine in the context of a § 1983 action for malicious prosecution). This doctrine applies "when a defendant's conduct is part of a continuing practice." Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). "When a defendant commits a continuing violation of the law, the limitations period starts running from the defendant's last act, not from when the effects of that violation end." Randall, 919 F.3d at 197. "In other words, the doctrine relies on a defendant's continuing acts, not a plaintiff's continuing injury." Id. at 199.

This narrow doctrine is most commonly applied in the employment discrimination context, and provides an "'equitable exception to the timely filing requirement.'" Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 236 (3d Cir. 2014) (quoting Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)). It focuses "on affirmative acts of the defendants," Cowell, 263 F.3d at 293, and provides that where "a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Cowell, 263 F.3d at 292 (quoting Brenner, 927 F.2d at 1295). "To determine whether a practice was continual, we consider (1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." Cibula v. Fox, 570 F. App'x 129, 135 (3d Cir. 2014) (not precedential) (citing Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165-67 (3d Cir. 2013)). Further, "[a] plaintiff must also point to an affirmative act that took place within the limitations period for the continuing violations doctrine to apply." Id. (citing Cowell, 263 F.3d at 293).

Although Plaintiff could have potentially asserted a viable claim for IIED as a result of the officers' actions during the March 18, 2012 arrest, the problem here is that his claim is

nonetheless time-barred. His intentional infliction of emotional distress claim expired on or about March 18, 2014, two years after the Defendant officers arrested him and allegedly submitted him to "police brutality" during his arrest. Plaintiff's original expert report potentially supports his contention that he suffered severe emotional distress as a result of the March 18, 2012 arrest. However, no reasonable jury could read the original expert report and supplemental report to support a finding of IIED based upon specific instances of post-arrest police conduct in order to toll the statute of limitations. Moreover, Plaintiff's expert report and supplemental expert report do nothing to support his contention regarding a continuing violation. While the expert reports may have provided a basis to support his IIED claim had it been timely filed, these reports fail to provide evidence of severe emotional distress suffered as a result of post-arrest conduct or incidents separate and apart from the initial arrest. Instead, the supplemental report merely supports the original opinion of Dr. Milchman, regarding Plaintiff's severe emotional distress due to the March 18, 2012 arrest. There is no evidence in either of the reports to indicate that Plaintiff suffered severe emotional distress independently of the arrest due to Defendants' post-arrest conduct. The key sentence is found on the last page of Dr. Milchman's supplemental report, which states: "[m]y original opinion is that . . . [Plaintiff] suffered grave moral injury is reinforced and strengthen by the legal authorities' own words describing, explaining and defending their behavior." ECF No. 115, Ex. N (Supplemental Report, dated Nov. 8, 2018) at 30.

Simply put, the supplemental report reinforces and strengthens Dr. Milchman's initial conclusions as to the impact of the March 18, 2012 arrest. She does not make any separate or independent findings that Plaintiff suffered severe emotional distress as a result of post-arrest conduct, i.e. the allegedly false testimony given by the Defendant officers at Plaintiff's probable cause hearing or during his trial. See ECF No. 115, Ex. N (Supplemental Report, dated Nov. 8,

2018) at 29 ("The moral injury that Mr. St. Fleur suffered as a result of being beaten by the police without provocation in the incident of 3/18/12, as stated in my original 7/6/18 report, is intensified by the police's behavior in the aftermath of that incident."). Although Plaintiff may have continued to suffer severe emotional distress as a result of the March 18, 2012 arrest and the alleged "police brutality" he experienced that day, the record before the Court does not support the application of the continuing violation doctrine in order to toll the statute of limitations. See Cowell, 263 F.3d at 293 (noting that a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.") (citation omitted).

Plaintiff's false arrest and intentional infliction of emotional distress claims are time-barred, because these claims accrued at the time of Plaintiff's injury (i.e. his arrest) on March 18, 2012. Pursuant to New Jersey's two-year statute of limitations, they expired on or about March 18, 2014. Plaintiff did not file suit until February 26, 2015, nearly a full year later, and the Court finds that the continuing violation doctrine is not applicable in these circumstances. Accordingly, Plaintiff's IIED claim (Count Six) and wrongful/false arrest claim (Count Three) are dismissed as a matter of law.

### C. Monell Claims against the City of Linden (Count Two) and Injunctive Relief to Stop the Alleged Monell Violations (Count Five)

Plaintiff's claims against the City of Linden and Municipal Prosecutor Scutari are premised on the theory that Linden is responsible for Defendant officers' spoliation of potentially exculpatory evidence. Plaintiff alleges that the municipal "policy" that caused the constitutional violation of his due process rights is the Linden Prosecutor's Office and Linden Police Department's thirty-day routine policy and practice of purging police vehicle camera videos from the server where no "burn" requests are timely submitted. Specifically, Plaintiff challenges the failure to submit burn requests to preserve videos from the police vehicle cameras

allegedly present at the scene of his arrest prior to the routine purging of the server, which destroyed exculpatory or potentially exculpatory evidence. Defendants, however, maintain that summary judgment must be granted because Plaintiff fails to point to any policy or custom that led to a constitutional violation The Court agrees.

"A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). This means that "a plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." Forrest v. Parry, No. 16-4351, 2019 U.S. App. LEXIS 20486, at *20-21 (3d Cir. July 10, 2019) (citing Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)).

The Supreme Court provides that, to establish municipal liability through municipal policy:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. . .

Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Therefore, "[l]iability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the "moving force" behind the constitutional tort of one of its employees.'" Thomas, 749 F.3d at 222 (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991)). Thus, to make a claim for municipal liability under Monell, a

plaintiff must both identify conduct attributable to the municipality and prove that this conduct manifests culpability and causality sufficient for the imposition of municipal liability.

The Third Circuit has explained that "'if a person has suffered no constitutional injury at the hands of [any] individual police officer, the fact that the departmental regulations might have authorized [unconstitutional action] is quite beside the point.'" Williams v. W. Chester, 891 F.2d 458, 467 (3d Cir. 1989) (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)) (alterations in original). Therefore, a municipality cannot be held liable under Monell in the absence of an underlying constitutional violation. See Johnson v. City of Phila., 837 F.3d 343, 354 n.58 (3d Cir. 2016) (citing Grazier ex rel. White v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003)). To survive Defendants' motion for summary judgment on this claim, Plaintiff must offer evidence from which a reasonable jury could find that he has proven every element of his claim. Plaintiff has not done so.

Here, Plaintiff alleges Monell violations for:

> (a) Having a policy to destroy exculpatory, inculpatory and potentially exculpatory evidence including surveillance video and dashboard camera video recordings, (b) having a policy that contradicts the officially promulgated regulations of the Alcohol Beverage Control with respect to police officers working at establishments that serve alcohol in the municipality where they serve as police officers, (c) having a policy that violates the DARM schedules for retention of evidence, and (d) having a policy to violate the official guidelines of the New Jersey Attorney General with respect to the filing of use of force reports (Count 2).

ECF No. 115-1 at 9. Plaintiff further contends that "[i]f an officer fails to enter a burn request in a criminal matter, the MVR is automatically deleted after 30 days, instead of preserved for five (5) years. This means that the Linden policy, on its face, results in the destruction of evidence in violation of Brady. Further, it is apparent that the Linden Municipal Prosecutor's office's custom in how it preserves and produces evidence violates Brady on its face." ECF No 115-1 at 52-53.

The City of Linden correctly argues that the record contains no evidence that would support the essential elements of a claim seeking to hold the City liable for alleged constitutional violations committed in the course of Plaintiff's arrest. Plaintiff fails to provide any evidence of an underlying *constitutional violation* committed by the individual Defendants to support his Monell claim. Instead, Plaintiff's allegations refer solely to actions that may have violated certain State guidelines, such as New Jersey's DARM schedules for retention of evidence and the official guidelines of the New Jersey Attorney General with respect to the filing of use of force reports. The evidence Plaintiff sets forth as a basis for his Monell claims is thus insufficient as a matter of law, because it fails to set forth a constitutional violation that can be attributed to the City of Linden.

Moreover, although Plaintiff contends that Linden's practice and policy of purging video after thirty days violated his post-arrest due process rights by destroying exculpatory or potentially exculpatory evidence, the Court finds that this spoliation allegation is not a proximate cause of Plaintiff's alleged injuries. Where a "policy or custom does not facially violate federal law, causation can be established only by 'demonstrating that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Brown, 520 U.S. at 407).

"Under Brady v. Maryland, 373 U.S. at 87, the prosecution's suppression of evidence favorable to a criminal defendant violates due process when the evidence is material to guilt or punishment." United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006). "To establish a Brady violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." Id. "[T]he prosecution's

duty to disclose favorable evidence is not dependent upon a request from the accused." Smith v.

Holtz, 210 F.3d 186, 195 (3d Cir. 2000). Evidence is considered material under Brady "'if there

is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433 (1995) (quoting

United States v. Bagley, 473 U.S. 667, 676 (1985)). However, "[th]e mere possibility that an

item of undisclosed information might have helped the defense, or might have affected the

outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v.

Agurs, 427 U.S. 97, 109-10 (1976).

Although this "duty of disclosure is tightly tethered to constitutional guarantees of due

process, 'the Constitution is not violated every time the government fails or chooses not to

disclose evidence that might prove helpful to the defense.'" Holtz, 210 F.3d at 196 (quoting

Kyles, 514 U.S. at 436-37). "Rather, the prosecution's failure to disclose evidence rises to the

level of a due process violation only if the government's evidentiary suppression undermines

confidence in the outcome of the trial. Thus, the question is not whether the defendant would

more likely than not have received a different verdict with the [concealed] evidence, but whether

in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of

confidence." Id. at 196 (internal quotation marks and citations omitted) (alteration in original).

Plaintiff fails to show how Linden's policy and practice with respect to video retention

and purging independently rises to the level of a constitutional due process violation, or that by

maintaining the thirty-day retention and routine purging policy Linden exhibited "deliberate

indifference" to an obvious risk. Even assuming that Plaintiff's counsel properly sent the

preservation notice to the Union County Prosecutor's office, as opposed to the Linden

Prosecutor's Office and the Linden Police Department, and made proper discovery demands of

the Linden Prosecutor's Office, Plaintiff's argument relies on the destruction of evidence that may or may not have been probative of his innocence; a video from a police vehicle that may or may not have captured his arrest. Although all facts must be viewed in the light most favorable to Plaintiff, it was still Plaintiff's burden to show that Linden's action caused a constitutional injury. Plaintiff has not shown evidence of a <u>Brady</u> violation because there is no indication that the video was material or exculpatory, and Plaintiff has not made a demonstration that any exculpatory evidence was destroyed. Indeed, there is no way for the Court to determine whether any destroyed videos were exculpatory, potentially exculpatory, or totally irrelevant. The evidence in the record is thus insufficient to demonstrate it meets the materiality threshold required by <u>Brady</u>.

Instead, Plaintiff offers evidence which bears only a hypothetical possibility of being potentially exculpatory. However, a practice or policy which in itself is not unconstitutional does not give rise to a <u>Monell</u> claim unless it is the "moving force" behind a constitutional tort; and a violation of state procedure or policy, such as the New Jersey DARMS schedule, does not by itself create a federal due process obligation or necessarily constitute a <u>Brady</u> violation. Nor has Plaintiff demonstrated what injury he actually suffered as a result of the destruction of any such videos. Indeed, Plaintiff litigated this very issue in the Municipal Court, and in the Superior Court via an interlocutory appeal. In short, the record before the Court does not suggest that the destroyed videos were material as defined under <u>Brady</u> and its progeny. Accordingly, the Court finds no genuine dispute of material fact exists to support Plaintiff's municipal liability claim, and Defendants' motion for summary judgment is granted on this claim.

Finally, where a plaintiff cannot establish a constitutional injury, he is not entitled to damages under Section 1983 or injunctive relief. See <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95,

120 (1983) (plaintiff's entitlement to damages under Section 1983 and his entitlement to injunctive relief depended on whether he could show the defendant's policy violated the Constitution). Therefore, the Court will additionally grant Defendants' motion for summary judgment on Count Five, seeking injunctive relief as to the <u>Monell</u> violations, because Plaintiff has failed to show an underlying constitutional violation that would entitle him to injunctive relief.[10]

### D. <u>1983 Due Process Claims (Count One)</u>

Plaintiff alleges that his right to Due Process was violated by Defendants for essentially the same reasons underlying his <u>Monell</u> claim, in that Defendants failed to produce exculpatory evidence in violation of <u>Brady</u> and violated his right to due process by destroying exculpatory or potentially exculpatory evidence. Specifically, as discussed in the proceeding section, Plaintiff alleges constitutional violations based on post-arrest conduct, and challenges the Linden Police Department's failure to preserve videos from the police vehicle cameras prior to the routine purging of the server which maintains and stores all of these video recordings.

Essentially, Plaintiff appears to simply reiterate the same claims he sets forth against Linden as to the individual officers involved in his arrest: that Officer Jedrzejewski, Officer Sheehan, Officer Mohr, and Lt. Bara violated his due process rights by failing to submit burn requests for potentially exculpatory video footage from police vehicles that may have captured his arrest and the disputed events following his arrest, resulting in the potentially relevant evidence being destroyed. Plaintiff additionally claims Mr. Crane and Sgt. Petruski violated his

---

[10] Because the Court has granted summary judgment in favor of all Defendants on Plaintiff's <u>Monell</u> claims (Count Two), the Court need not address whether Mr. Crane and Sgt. Petruski are entitled to qualified immunity or whether Prosecutor Scutari is entitled to absolute or qualified immunity on these claims.

due process rights by facilitating the routine purge and failing to preserve "all relevant evidence," which demonstrates their bad faith. ECF No. 115-1 at 43.

Plaintiff's § 1983 due process claims require an underlying violation of his constitutionally protected rights. The Court has found that Plaintiff has not demonstrated a <u>Brady</u> violation occurred. Insofar as Plaintiff's due process claims are based on the destruction of alleged potentially exculpatory evidence, and for substantially the same reasons described in the proceeding section, the due process claims fail as Plaintiff has not shown a genuine issue of material fact exists sufficient to preclude summary judgment as to his due process claims. Accordingly, the Court grants Defendants' motion for summary judgment as to all Defendants on Plaintiff's Section 1983 due process claim (Count One).[11]

### E. Malicious Prosecution Claims (Counts One and Seven)

Plaintiff alleges that Officer Jedrzejewski, Officer Mohr, Officer Sheehan, and Lt. Bara maliciously prosecuted him "for a crime he did not commit as a means to hide their wrongful arrest and assault." ECF 115-1 at 25.

"[F]ederal law holds that a malicious-prosecution claim accrues when criminal proceedings end in the plaintiff's favor." <u>Randall</u>, 919 F.3d at 198 (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994)). For Plaintiff, that occurred when his convictions were overturned by the Superior Court on December 1, 2014. Thus, Plaintiff had until December 1, 2016 to timely file; he filed his suit on February 15, 2015. Accordingly, Plaintiff's action for malicious prosecution is not time-barred, and the Court will proceed to analyze the merits of Plaintiff's state and federal malicious prosecution claims.

---

[11] The Court notes there is additionally a dispute over whether Plaintiff's due process claims are barred by the applicable statute of limitations. Because the Court finds Plaintiff cannot maintain his Section 1983 due process claims and grants summary judgment on these claims, the Court declines to address the issue of whether Plaintiff's claims were timely or barred by the applicable statute of limitations.

Plaintiff must prove five elements to prevail on a malicious prosecution under § 1983:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). In New Jersey, the common law tort of malicious prosecution requires a similar showing. It requires Plaintiff to show that Defendants "(1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in [Plaintiff's] favor." Wiltz v. Middlesex Cnty. Office of Prosecutor, 249 F. App'x 944, 950 (3d Cir. 2007) (citing Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 248 (3d Cir. 2001)).

### i. Probable Cause

Defendants argue that Plaintiff cannot maintain an action for malicious prosecution because probable cause existed for his arrest. Defendants also contend that Plaintiff is collaterally estopped from arguing a lack of probable cause, because the municipal court judge held a probable cause hearing and ruled that probable cause existed for the arrest, a ruling that Plaintiff never appealed. ECF No. 120 at 6. Defendants therefore contend that "this ruling is dispositive of the issue and bars Plaintiff from relitigating whether or not there was probable cause for the arrest." ECF 119 at 2.

The problem with Defendants' argument is that it is entirely bereft of any legal support. Defendants cite no caselaw or supporting authority for their proposition that a municipal court's probable cause finding is somehow totally unreviewable by this Court, and such a theory flies in the face of analogous Third Circuit case law describing the Court's role in examining probable cause underlying search and arrest warrants. See Geness v. Cox, 902 F.3d 344, 356-57 (3d Cir.

2018) ("Where, as here, a probable cause finding was made by a neutral magistrate in connection with a warrant application, a plaintiff must establish first, that the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant, and second, that those assertions or omissions were material, or necessary, to the finding of probable cause.") (quoting <u>Dempsey v. Bucknell Univ.</u>, 834 F.3d 457, 468-69 (3d Cir. 2016) (internal quotation marks omitted)).

Defendants did not arrest Plaintiff pursuant to a valid arrest warrant, in which case this Court would afford "substantial deference" to the neutral magistrate's probable cause determination. <u>See</u> <u>State v. Dispoto</u>, 383 N.J. Super. 205, 216 (App. Div. 2006) aff'd as modified, 189 N.J. 108 (2007); <u>Rasmussen v. United States</u>, 2015 U.S. Dist. LEXIS 173257, at *4 (D.N.J. Dec. 30, 2015). Instead, Defendants made a warrantless arrest of Plaintiff and subsequently prepared a criminal Complaint Warrant. <u>See</u> ECF No. 109-6, Ex. F (Compl. Warrant). In contrast to the "substantial deference" given to probable cause determinations for arrests pursuant to arrest warrants, "all warrantless searches or seizures are presumptively unreasonable . . . [and] when the police act without a warrant, the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it fell within one of the few well-delineated exceptions to the warrant requirement." <u>State v. Johnson</u>, 193 N.J. 528, 552 (2008) (internal quotation marks and citations omitted). The post-arrest determination by the Municipal Court that probable cause existed to issue a criminal complaint does not convert the warrantless arrest into an arrest made pursuant to a valid warrant, nor does it alleviate Defendants' burden in establishing the existence of probable cause.

"[D]istrict courts have 'broad discretion' in determining whether to apply offensive collateral estoppel." <u>Peterson v. Holmes</u>, No. 11-2594, 2017 U.S. Dist. LEXIS 66327, 2017 WL

1653949, at *8 (D.N.J. May 2, 2017) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)). Defendants provide absolutely no legal support or argument as to why the Court would be barred from examining a municipal court's probable cause finding, and yet would have express authority to review a probable cause finding as part of a warrant application. Nor can they, as "the Third Circuit has determined that within the context of a § 1983 claim for malicious prosecution, a finding of probable cause an underlying criminal prosecution does not conclusively establish that probable cause in fact existed. Instead, courts must independently consider this issue." Zisa v. Haviland, Civil Action No. 17-5551, 2018 U.S. Dist. LEXIS 180823, at *73-74 (D.N.J. Oct. 19, 2018) (citing Montgomery v. DeSimone, 159 F.3d 120, 125 (3d Cir. 1998)).

In this instance, Defendants maintain that the issue of probable cause for Plaintiff's arrest and prosecution was litigated and conclusively decided before the Municipal Court. But given the fact that the Superior Court later overturned and vacated Plaintiff's convictions on appeal, the Court concludes that the application of collateral estoppel is not appropriate or justified or under these circumstances.

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Here, Plaintiff's malicious prosecution claim clearly turns on a genuine dispute of material fact, as the competing testimony in the record creates an issue of fact as to whether probable cause existed for the arrest and to initiate proceedings against Plaintiff. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) ("Generally, the question of probable cause in a section 1983

damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts.") (citations and internal quotation marks omitted); <u>Montgomery</u>, 159 F.3d at 124 (reasoning that "the question of probable cause in a Section 1983 damage suit is [a question of fact] for the jury.") (citing <u>Patzig v. O'Neil</u>, 577 F.2d 841, 848 (3d Cir. 1978)). This means that there is also a question of fact as to whether Officer Jedrzejewski is entitled to qualified immunity. Additionally, where a question or genuine dispute of material fact exists regarding probable cause, one also exists regarding the existence of malice. <u>See</u> <u>LoBiondo v. Schwartz</u>, 199 N.J. 62, 94 (2009) ("[I]n an appropriate case, malice may be inferred from a lack of probable cause."); <u>see also</u> <u>Prince v. Aiellos</u>, 594 F. App'x 742, 746 (3d Cir. 2014) (not precedential) (stating that "[m]alice can be inferred from want of probable cause, provided the plaintiff produce[s] at least some extrinsic evidence of that malice," and holding that "[h]aving concluded that the District Court did not err in holding that material facts are in dispute regarding probable cause, it follows that malice . . . remains an open question.") (internal quotation marks and citation omitted).

It is axiomatic that on a motion for summary judgment, "a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." <u>Podobnik v. United States Postal Serv.</u>, 409 F.3d 584, 589 (3d Cir. 2005). Viewing the evidence in the light most favorable to Plaintiff, a genuine dispute of material fact exists as to whether Officer Jedrzejewski had probable cause to arrest Plaintiff. These questions require denial of summary judgment on this claim. Because of these material factual disputes, Defendants' motion for summary judgment must be denied as to the malicious prosecution claims (Counts One and Seven) asserted against Officer Jedrzejewski.

## ii. Other Elements of Malicious Prosecution

Defendants additionally argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claims because Plaintiff has failed to show they acted with malice and because there was no termination of a criminal proceeding in his favor. Specifically, in their reply papers, Defendants argue that "the [spitting] charge was dismissed by the Law Division on a vague procedural ground, not that the state failed to meet its evidentiary burden. . . This dismissal did not in any way indicate that Plaintiff was innocent of the charge of spitting on a police officer [i.e. the disorderly persons offence]. **Because Plaintiff cannot demonstrate actual innocence of the spitting charge, no claim for Malicious Prosecution can be maintained as a matter of law.**" ECF No. 120 at 6 (emphasis added). This Court disagrees.

Third Circuit caselaw provides that while the termination of criminal proceedings must at least be indicative of the plaintiff's innocence, "[a]ctual innocence is not required for a common law favorable termination." Smith v. Holtz, 87 F.3d 108, 113 (3d Cir. 1996). Thus, "a plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated in one of the following ways:"

> (a) a discharge by a magistrate at a preliminary hearing, or
> (b) the refusal of a grand jury to indict, or
> (c) the formal abandonment of the proceedings by the public prosecutor, or
> (d) the quashing of an indictment or information, or
> **(e) an acquittal, or**
> **(f) a final order in favor of the accused by a trial or appellate court.**

Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009) (en banc) (quoting Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)) (internal quotation marks omitted) (emphasis added). See also Geness, 902 F.3d at 356 (stating that "the *nol pros* termination [in Geness] was a favorable termination, for the abandonment of charges for 'insufficient evidence' unquestionably provides

'an indication that the accused is actually innocent of the crimes charged.'") (citations omitted).[12]

All three of Plaintiff's municipal court criminal convictions were overturned by the Superior Court on a *de novo* appeal. Defendants fail to cite to any supporting caselaw or authority to support their interpretation of the record— or that the Superior Court's reasoning for finding St. Fleur not guilty— somehow precludes this Court from finding that the proceedings terminated in his favor. Nor have Defendants set forth plausible reasons for why the dismissal of charges was not a determination favorable to Plaintiff. This is not an instance in which some of Plaintiff's convictions were upheld while others were dismissed. Nor is this a case involving prosecutorial discretion or use of a plea bargain. See, e.g. Donahue, 280 F.3d at 383 (finding no favorable termination where the prosecutor had "simply reasoned that Donahue was not likely to receive any additional jail time if convicted in a retrial, and concluded that further prosecution was therefore not an appropriate use of limited resources. It does not suggest that Donahue was innocent of the remaining criminal charges."); Jones v. Somerset Cnty. Prosecutor's Office, No. CV 15-2629 (FLW), 2017 U.S. Dist. LEXIS 53431, 2017 WL 1337432, at *6-7 (D.N.J. Apr. 7, 2017) (plea bargain dismissing some criminal charges is not a favorable termination for purposes of pursuing Section 1983 malicious prosecution claims). Here, the Superior Court dismissed all of Plaintiff's convictions on a *de novo* appeal for failure to disperse and for disorderly conduct after considering all the evidence and watching the Nuno's Surveillance Video. See ECF No.

---

[12] The Geness Court further explained that:

> Regardless of whether a *nol pros* order on its face "indicate[s] the innocence of the accused," . . . a district court must conduct a "fact-based inquiry," . . . considering, among other things, the "underlying facts" of the case, . . . the "particular circumstances" prompting the *nol pros* determination, . . . and the substance of the "request for a *nol pros* that . . . result[ed in the] dismissal."

Geness, 902 F.3d at 356 (internal citations omitted).

115-13, Ex. J (Superior Court Trial Tr., dated Dec. 1, 2014) at 36:01-13.[13] With regard to the two Failure to Disburse convictions, the Superior Court explicitly stated that the State had failed to uphold its evidentiary burden. See ECF No. 115-13, Ex. J (Superior Court Trial Tr., dated Dec. 1, 2014) at 35:20-36:04. Moreover, the transcript of the Superior Court proceedings fails to provide that Plaintiff's conviction regarding the alleged spitting incident was overturned solely because of procedural issues. Accordingly, the Court finds that on this record, the "judgment as a whole" reflects Plaintiff's innocence such that Plaintiff has satisfied the favorable resolution requirement for a claim of malicious prosecution.

As to the other requirements, it is undisputed that Officer Jedrzejewski initiated a criminal proceeding against Plaintiff, as he was listed as the complainant of the arrest identified in the criminal complaint. See Prunkel v. Cty. of Bergen, Civil Action No. 17-5154 (JLL), 2018 U.S. Dist. LEXIS 143973, at *22 (D.N.J. Aug. 23, 2018) ("The initiation of a proceeding can be shown by a police officer providing misleading or false information to a prosecutor or court official.") (citing Hector v. Watt, 235 F.3d 154, 164 (3d Cir. 2000)). Officer Jedrzejewski also can be said to have initiated the criminal proceeding by supporting the charges with the allegedly false police report and/or by providing allegedly perjurious testimony during the probable cause hearing and at trial. See Gallo v. Philadelphia, 161 F.3d 217, 224 (3d Cir. 1998) (noting that a "section 1983 malicious prosecution claim might be maintained against one who furnished false information to . . . prosecuting authorities"); Al-Mohammedi v. City of Buffalo, 13-CV-1020, 2016 U.S. Dist. LEXIS 42730, 2016 WL 1748264, at *8 (W.D.N.Y. Mar. 29, 2016) ("Initiation or continuation of a proceeding may also be shown where an arresting officer creates false

---

[13] The Court notes that a review of the December 1, 2014 transcript reveals that the Superior Court's exact reasoning for dismissing the Disorderly Conduct [i.e. the spitting charge] is unclear. Neither party provided the Court with the actual final order or judgment of acquittal from the Superior Court. Nevertheless, it is undisputed that Plaintiff was found not guilty as to all three of the appealed criminal convictions.

information likely to influence a jury's decision and forwards that information to prosecutors, or withholds relevant and material information.") (citation omitted); <u>Hohsfield v. Hemhauser</u>, No. 09-5377, 2013 U.S. Dist. LEXIS 11610, at *8 (D.N.J. Jan. 29, 2013) ("A defendant initiated a criminal proceeding where the 'defendant took some active part in instigating or encouraging the prosecution, advised or assisted another person to begin the proceeding, ratified it when it is begun, or took any active part in directing or aiding the conduct of the case.'") (quoting <u>Grendysa v. Evesham Twp. Bd. of Educ.</u>, Civil Action No. 02-1493 (FLW), 2005 U.S. Dist. LEXIS 22748, at *15 (D.N.J. Sep. 27, 2005)).

In sum, Plaintiff has established that the proceedings terminated in his favor, and that Officer Jedrzejewski initiated a criminal proceeding against Plaintiff. The parties do not dispute that Plaintiff suffered a deprivation of liberty. As discussed above, a material question of fact exists as to whether Plaintiff's arrest was supported by probable cause. Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that Officer Jedrzejewski lacked the necessary probable cause to initiate the arrest, which supports an inference that Officer Jedrzejewski acted with malice. Accordingly, summary judgment as to Plaintiff's malicious prosecution claim (Counts One and Seven) against Officer Jedrzejewski must be denied.

### iii. **Officer Sheehan, Officer Mohr, and Lt. Bara**

Despite Plaintiff's contention that Officer Sheehan, Officer Mohr, and Lt. Bara were involved in effectuating Plaintiff's arrest, and that they provided allegedly false testimony at trial, none of the other officers named as Defendants filed the charges against Plaintiff or signed the criminal complaint. Therefore, the Court finds that as to these Defendants, Plaintiff fails to satisfy the first prong required to establish a Section 1983 claim for malicious prosecution, that the defendant initiate the criminal proceeding. The malicious prosecution claim thus fails as to

the remaining officers. See Johnson v. Knorr, 477 F.3d 75, 81-82 (3d. Cir. 2007). Accordingly, summary judgment is granted on Plaintiff's malicious prosecution claims (Counts One and Seven) as to Officer Sheehan, Officer Mohr, and Lt. Bara.

## F.  Qualified Immunity as to Officer Jedrzejewski

Officers Jedrzejewski additionally moves for summary judgment on the grounds that he is entitled to qualified immunity for each of the claims that Plaintiff alleges against him.[14]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Under this doctrine, an officer is entitled to immunity if his or her mistake as to what the law requires is reasonable. Saucier v. Katz, 533 U.S. 194, 205 (2001); see also Pearson, 555 U.S. at 244 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Saucier v. Katz, the Supreme Court established a two-part analysis to determine if an officer is entitled to qualified immunity. 533 U.S. 194 (2001). One, a court must inquire whether, viewing the facts of a case in the light most favorable to the plaintiff, the facts show that the official's conduct violated a constitutional right. Saucier, 533 U.S. at 201. Two, a court must determine whether the right was clearly established at the time of the alleged misconduct. Id.; see

---

[14] Because the Court has granted summary judgment in favor of all Defendants on Plaintiff's § 1983 false arrest, due process, and common-law IIED and false arrest claims, and in favor of Officer Mohr, Officer Sheehan, and Lt. Bara on Plaintiff's Section 1983 and common-law malicious prosecution claims, the Court need not address whether any of these Defendants are entitled to qualified immunity on those claims.

also Werkheiser v. Pocono Twp., 780 F.3d 172, 176 (3d Cir. 2015) (setting forth Saucier's two-step analysis for qualified immunity.)  In its discretion, a court may address the two prongs of the Saucier analysis in either order. Pearson, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); see also Werkheiser, 780 F.3d at 176 (noting that, under Pearson, the court may address the Saucier prongs in either order, at its discretion). A defendant's entitlement to qualified immunity is a question of law for the court to decide. Saucier, 533 U.S. at 201. However, where there are disputed issues of fact that bear on the question of whether a clearly established right existed and whether the officer's actions were objectively reasonable, the factual disputes must be submitted to the jury. See Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002) ("[A] decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis. Thus, while we have recognized that it is for the court to decide whether an officer's conduct violated a clearly established right, we have also acknowledged that the existence of disputed historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue."). Defendants bear the burden of establishing the applicability of qualified immunity. Thomas v. Independence Twp., 463 F.3d 285, 292 (3d Cir. 2006).

With respect to the malicious prosecution claims, if the Court draws all inferences in favor of Plaintiff, as it must, too many factual questions remain for the Court to determine that Officer Jedrzejewski is entitled to qualified immunity. Plaintiff maintains that he was arrested and prosecuted without probable cause. Defendants strongly contest these assertions. Where there are disputed issues of fact that bear on the question of whether a clearly established right

existed, and whether the officer's actions were objectively reasonable, the factual disputes must be submitted to the jury. See Curley, 298 F.3d at 278.

Under the facts of this case, there are disputes of material fact about whether there was probable cause to arrest and prosecute Plaintiff, which must be sent to the trier of fact. See Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir. 1993) (holding that "[i]f a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established."); see also Hassan v. City of Camden, No. 08-5074 (JEI/AMD), 2010 U.S. Dist. LEXIS 117425, at *13 (D.N.J. Nov. 4, 2010) (reasoning that, if the police defendants arrested the plaintiff without probable cause and "then maliciously prosecute[d] him, qualified immunity will not protect [the defendants] as these are clearly established constitutional rights."); Molina v. City of Lancaster, 159 F. Supp. 2d 813, 820 (E.D. Pa. 2001) ("[T]he right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution is clearly established.") (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995)). Accordingly, the Court shall deny Officer Jedrzejewski's motion for summary judgment on the basis of qualified immunity.

### G. Punitive Damages (Count Eight)

Punitive Damages are available to a plaintiff suing under Section 1983, where "the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard that he was doing so." Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978); see also Smith v. Wade, 461 U.S. 30, 56 (1983) (holding that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be

motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because none of Plaintiff's claims can be maintained. Defendants are incorrect, as Plaintiff has presented a genuine issue of material fact as to whether Officer Jedrzejewski acted with, at minimum, indifference toward Plaintiff's federally-protected rights, since a jury may conclude that Officer Jedrzejewski falsely implicated Plaintiff in criminal activity, causing Plaintiff to be arrested and detained without probable cause. Therefore, Officer Jedrzejewski's application for summary judgment on Plaintiff's punitive damages claim will be denied.

## H. Claims Against Chief Schulhafer

The face of Plaintiff's Amended Complaint names Chief Schulhafer as a Defendant in his official capacity. Defendants argue that summary judgment is proper, because Plaintiff presents no evidence that Chief Schulhafer had any knowledge of, or personal involvement in, the decision to arrest and file charges against Plaintiff. Moreover, Defendants point out that Chief Schulhafer was merely a Captain in the Linden Police Department at the time of Plaintiff's arrest, and had no involvement in Plaintiff's arrest and prosecution. ECF No. 109-4 at 40-41. Finally, Defendants contend that since Chief Schulhafer is only named in his official capacity, he is not a proper Defendant amendable to suit. The Court agrees.

Plaintiff fails to set forth or identify which, if any, causes of action are alleged against Chief Schulhafer. Nor does Plaintiff provide any factual allegations that involve Chief Schulhafer or show Chief Schulhafer as having any involvement in Plaintiff's case. Thus, the Court grants Defendants' motion for summary judgment on all counts as to Chief Schulhafer.

**IV.**     **Conclusion**

For the reasons stated herein, Defendants' Motion for Summary Judgment is denied in part and granted in part. An appropriate order will follow.


                                                        s/ Stanley R. Chesler

                                          STANLEY R. CHESLER
                                       United States District Judge

Dated: August 30, 2019